**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EARNEST PARTNERS, LLC, a Delaware limited liability company, | Case No. 5:19-cv-05489-LHK |
| Plaintiff, | **AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [~~PROPOSED~~] ORDER** |
| v. | |
| EARNEST LLC, a Delaware limited liability company, EARNEST OPERATIONS LLC, a Delaware limited liability company, and NAVIENT CORPORATION, a Delaware corporation | Complaint Filed: August 30, 2019 |
| Defendants. | |



STIPULATED ESI ORDER                                                                                           - 1 -
CASE NO. 5:19-CV-05489-LHK

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     GENERAL PRINCIPLES**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.     The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.     PRESERVATION OF ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to backup and archive data; provided, however, that the parties shall preserve discoverable ESI in their possession, custody, or control that is reasonably identifiable, based on facts known at the time, as discoverable ESI.

2.     Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

      a.     Deleted, slack, fragmented, or other data only accessible by forensics.

      b.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.



  e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

  f. Server, system or network logs.

  g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

  h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

  i. Text messages or other messages sent only between mobile devices and not separately accessible on a centralized server.

## C.  INFORMATION PROTECTED FROM DISCOVERY

  1. Each party will review documents for privileged information (or other information subject to a recognized immunity from discovery) prior to production. Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document.

  2. Pursuant to Fed. R. Evid. 502(d), the production or disclosure of any material subject to work-product protection, the attorney-client privilege, or other legal privilege protecting information from discovery, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding, so long as the producing party satisfies Fed. R. Evid. 502(b). The proper procedure for the notification and return of privileged or protected information produced in this matter is governed by Fed. R. Civ. P. 26(b)(5)(B). This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), subject to the requirements of 502(b).

  3. In the interests of efficiency and to reduce the burdens associated with discovery, the parties have reached an agreement on the method and format for asserting claims of attorney-client privilege and work-product protection (collectively, "privilege") over otherwise discoverable materials withheld or redacted for privilege. Nothing in this agreement or order is intended to alter or limit the producing party's existing obligations to evaluate the privilege, on an individualized basis, for each document withheld or redacted on the basis of a claim of privilege. Privilege logs should include an identification of the privilege asserted, a brief description of the basis for the



STIPULATED ESI ORDER  - 3 -
CASE NO. 5:19-CV-05489-LHK

1  privilege, and the following metadata: author, email from, email to, email cc, email bcc, and date
2  family (date of the parent email).

3      4.    The parties are not required to log privileged communications or attorney work
4  product dated after the filing of the complaint in this matter, or privileged communications
5  occurring solely between the parties' respective employees and outside counsel or solely between
6  counsel.

7  **D.    ESI DISCOVERY PROCEDURES**

8      1.    <u>On-site inspection of electronic media.</u>  Such an inspection shall not be permitted
9  absent a demonstration by the requesting party of specific need and good cause or by agreement of
10 the parties.

11     2.    <u>Format.</u>  The parties agree that ESI will be produced to the requesting party with
12 searchable text, in the format described in Exhibit 1.

13 **E.    EMAIL SEARCH AND PROCEDURE**

14     1.    In responding to production requests under Federal Rules of Civil Procedure 34 and
15 45, the parties agree to limit the searching of email or other forms of electronic correspondence
16 (collectively "email") as follows, provided that nothing herein shall be construed to limit a party's
17 obligations under the Federal Rules of Civil Procedure.

18     2.    Each party will make a concerted effort to research and identify the most relevant
19 custodians of documents responsive to document requests and will produce responsive documents
20 from them.  The producing party will notify the requesting party of the identity of each  custodian
21 whose ESI is being searched and from whom documents are being produced, along with a
22 description of their role and the subject matter(s) on which they are knowledgeable.  The parties
23 may then meet and confer to modify the list of custodians or identify more or different custodians if
24 necessary.  The parties may jointly agree to limit the number of  custodians without the Court's
25 leave.  The Court shall consider contested requests for additional custodians, upon showing a
26 distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be
27 considered as part of any such request.

28     3.    If the producing party elects to use search terms to locate potentially responsive ESI,



STIPULATED ESI ORDER    - 4 -
CASE NO. 5:19-CV-05489-LHK

it shall disclose the search terms and the resulting number of search hits to the requesting party. If necessary, the parties will meet and confer regarding whether (a) the hit-counts are reasonable for each search, such that the producing party should produce the responsive searches, subject to the foregoing requirements, or (b) the hit-counts are unreasonably high, such that the requesting party should revise the search terms and/or time frame to reduce the number of search hits. The Court shall consider contested requests for additional search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

4. Ultimately, the producing party shall determine what keyword search terms it will use and is not obligated to adopt the edits or additions to its keyword search terms provided by the requesting party. In the event that the requesting party believes that the producing party's keyword search terms remain insufficient, the requesting party may file a motion to compel pursuant to the applicable Federal Rules of Civil Procedure and Local Rules.

5. A "search term" may be defined to include a reasonable number of permutations and abbreviations that mean the same thing and shall count as a single term. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.

6. Nothing in this Order prevents the parties from using technology assisted review and other techniques insofar as their use improves the efficacy of discovery.



1  DATED:  July 13, 2020            Respectfully submitted,

2                                   KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                   By: */s/ Nichole Davis Chollet*
                                        Judith A. Powell (appearing *pro hac vice*)
5                                       jpowell@kilpatricktownsend.com
                                        Nichole Davis Chollet (appearing *pro hac vice*)
6                                       nchollet@kilpatricktownsend.com
                                        Sarah E. Holland (appearing *pro hac vice*)
7                                       seholland@kilpatricktownsend.com
                                        1100 Peachtree Street, Suite 2800
8                                       Atlanta, GA 30309-4528
                                        Tel.: (404) 815-6500
9                                       Fax: (404) 815-6555

10                                      Gregory S. Gilchrist (State Bar No. 111536)
                                        ggilchrist@kilpatricktownsend.com
11                                      Two Embarcadero Center, Suite 1900
                                        San Francisco, CA  94111
12                                      Telephone:   415 576 0200
                                        Facsimile:     415 576 0300
13
                                        *Attorneys for Plaintiff Earnest Partners, LLC*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



STIPULATED ESI ORDER                                                    - 6 -
CASE NO. 5:19-CV-05489-LHK

| | | |
|---|---|---|
| 1 | DATED:  July 13, 2020 | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: */s/ Anh-Khoa T. Tran*
Kathryn Zalewski (SBN 263119)
kathryn.zalewski@wilmerhale.com
Anh-Khoa Tran (SBN 295393)
khoa.tran@wilmerhale.com
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

MARK G. MATUSCHAK (*pro hac vice*)
mark.matuschak@wilmerhale.com
VINITA FERRERA (*pro hac vice*)
vinita.ferrera@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

SAMANTHA PICANS (*pro hac vice*)
sam.picans@wilmerhale.com
1225 Seventeenth Street
Suite 2600
Denver, CO 80202
Telephone: (720) 598-3477
Facsimile: (720) 274-3133

*Attorneys for Defendants*
*Earnest LLC,*
*Earnest Operations LLC,*
*Navient Corporation*



# ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: __July 14, 2020_____

_____
The Honorable Susan van Keulen
UNITED STATES MAGISTRATE JUDGE



**EXHIBIT 1 - PARTIES' AGREED PRODUCTION FORMAT**

**1.    Definitions**

The following definitions apply:

**A.** "Bates Number" means a unique number assigned to a document produced in litigation.

**B.** "Custodian" means a person or resource (*e.g.*, a shared file server) who had custody of information or a document prior to collection for production.

**C.** "Database" means an electronic collection of structured data (often maintained in a non-custodial manner), such as data created and maintained in Oracle, SAP, SQL, or Microsoft Access.

**D.** "ESI" or "Electronic Document" refers to information stored in electronic form including word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, Microsoft PowerPoint), databases, spreadsheets (*e.g.*, Microsoft Excel) and email, together with the metadata associated with each such document.

**E.** "Extracted Text" shall refer to the result of the process by which textual content of an Electronic Document is gleaned and extracted from an original Electronic Document for the purpose of creating a plain-text Electronic Document containing the textual content from that Electronic Document.

**F.** "Load File" refers to a file or files issued with each production providing a map to the images and metadata or coding associated with the documents in the production.

**G.** "Native Format" as used herein, means the default format of a data file created by its associated software program. For example, Microsoft Excel produces its output as ".xls" files by default, which is the Native Format of Excel. Microsoft Word produces native files with a ".doc" extension, which is the Native Format of Word.

**H.** "Optical Character Recognition" or "OCR" refers to the result of the process by which a hard copy or non-searchable Electronic Document is analyzed by a computer for the purposes of creating a plain-text Electronic Document that contains the textual content gleaned from the document.



**I.** "Producing Party" means any Party to this Multidistrict Litigation Proceeding who produces documents or information under this Order.

**J.** "Receiving Party" means any Party to this Multidistrict Litigation Proceeding who receives documents or information under this Order.

**2. Production Format**

In general, documents shall be produced as Bates-stamped tagged image file format ("TIFF") images accompanied by an image load file, a data load file with fielded metadata, document-level extracted text for ESI, and optical character recognition ("OCR") text for scanned hard copy documents and ESI that does not contain extractable text. Documents shall be produced as single-page, black and white TIFF or JPEG image files with the associated text and metadata; however, the Parties shall endeavor to produce appropriate documents in color. To the extent that color documents are produced, they should be produced in a single-page JPEG format. Detailed requirements, including files to be delivered in native format, are below.

**A. De-duplication and Threading.** To avoid the production of more than one copy of a unique item, the parties will use industry standard MD5 or SHA-1 hash values to globally de-duplicate all files identified for production. Loose e-files will not be compared to email attachments for de-duplication purposes. Hard copy documents containing handwritten notes will not be considered as duplicative of any other document. To reduce the volume of entirely duplicative content within email threads, the parties may, but are not required to, use email thread suppression. A party that uses email thread suppression must disclose such use to the other parties.

**B. Document Unitization.** Where documents with attachments are produced, they will be attached in the same manner as included in the original file. Where documents are produced and all attachments thereto are not included, the parties will identify the missing attachments by means of a "place holder" file and explain the reason for their non-production. Documents that are segregated or separated from other documents, whether by inclusion of binders, files, dividers, tabs, clips, or any other method, will be produced in a manner that reflects these divisions. If a party converts paper documents into electronic format, distinct documents should not be merged into a single record, and single documents should not be split into multiple

records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly

    **C.**    **Production Delivery.** Productions should be delivered on an external hard drive, via FTP, or via secure data transfer site.

    **D.**    **Encryption.** To maximize the security of information in transit, the Parties should encrypt any media on which documents are produced.

    **E.**    **TIFF Image Requirements**

        i.    TIFF images will be produced in black and white, 300x300 dpi Group IV single-page format and should be consecutively Bates-stamped.

        ii.    Images will include the following content where present:

           a.    For word processing files (*e.g.*, Microsoft Word): Comments, "tracked changes," similar in-line editing, and all hidden content.

           b.    For presentation files (*e.g.*, Microsoft PowerPoint): Speaker notes, comments, and all other hidden content.

           c.    For spreadsheet files (*e.g.*, Microsoft Excel – if applicable): Hidden columns, rows, and sheets; comments, and "tracked changes," and any similar in-line editing or hidden content.

    **F.**    **Native Production Requirements**

        i.    Spreadsheet files (*e.g.*, Microsoft Excel and .csv files) should be provided in native format.



a. In lieu of a full TIFF image version of each spreadsheet file, a single placeholder image bearing the relevant Bates number and confidentiality designation should be produced.

b. When redaction of a spreadsheet is necessary, a redacted full TIFF version may be produced provided that the spreadsheet is manually formatted for optimal printing. If the spreadsheet requiring redaction is not reasonably useable in TIFF format, the parties will meet-and-confer to determine a suitable production format.

c. If redactions within a native spreadsheet are necessary, the parties will meet-and-confer to discuss the process and provide a means to identify such documents in the production.

ii. Media files (*e.g.*, .mp3, .wmv, etc.) will be produced in native format.

iii. The parties will meet-and-confer to discuss a suitable production format for any proprietary or non-standard file types that require special software or technical knowledge for review.

iv. The parties will meet-and-confer to discuss a suitable production format for any databases or database reports.

v. Any files that cannot be accurately rendered in a reviewable TIFF format should be produced in native format.

vi. The parties may request native or color copies of any documents that cannot be accurately reviewed in black and white TIFF format. Reasonable requests for native or color documents should not be refused.

**G. Load File Requirements**

i. A Relativity- and Concordance-compatible data load file should be provided with each production volume and contain a header row listing all of the metadata fields included in the production volume.

ii. Image load files should be produced in Concordance/Opticon compatible



STIPULATED ESI ORDER - 12 -
CASE NO. 5:19-CV-05489-LHK

format.

**H. Extracted Text/OCR Requirements**

    i.    Electronically extracted text should be provided for documents collected from electronic sources. Text generated via OCR should be provided for all documents that do not contain electronically extractable text (*e.g.*, non-searchable PDF files or JPG images) and for redacted and hard copy documents. The parties agree not to degrade the searchability of documents as part of the document production process.

    ii.    Document text should be provided as separate, document-level text files and not be embedded in the metadata load file.

    iii.    Text files should be named according to the beginning Bates number of the document to which they correspond.

    iv.    If a document is provided in native format, the text file should contain the extracted text of the native file.

    v.    A path to each extracted text file on the delivery media should be included in a load file field or in a separate cross-reference file.

    vi.    A text file should be produced for all records even if the underlying records do not contain text.

**I. Metadata.** The parties agree to produce the following metadata fields where applicable. A Party is not obligated to produce metadata from a document if metadata does not exist in the document, **or** if the metadata is not machine-extractable (except for Custodian and MD5 or SHA-1 hash, which should be provided for all ESI). For redacted Electronic Documents, OCR of the viewable text will be produced.

METADATA FIELDS

| Field | Comments |
| --- | --- |
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |

| | |
|---|---|
| BegAttach | Bates number of the first page of a family range |
| EndAttach | Bates number of the last page of a family range |
| AttachRange | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document. |
| PageCount | Number of pages in a document. |
| FileExtension | Original file extension as the document was maintained in the ordinary course |
| DocTitle | Document title as stored in file metadata |
| Document Subject | Any value populated in the Subject field of the document properties |
| Custodian | Custodian full name |
| Duplicate Custodian | Custodian(s) containing duplicate versions of original record; Last, First |
| Confidentiality | Confidentiality designation of a document |
| Author | Document author information for non-email |
| Last Modified By | The last person to modify the document as indicated in metadata |
| From | Email From |
| To | Email TO |
| Cc | Email CC |
| BCC | Email BCC |
| Subject | Email Subject |
| AttachmentCount | Number of attachments an email has |
| DateCreated | File date and time created MM/DD/YYYY HH:MM AM/PM |
| DateModified | File date and time modified MM/DD/YYYY HH:MM AM/PM |
| DateSent | Email date and time sent MM/DD/YYYY HH:MM AM/PM |
| DateReceived | Email date received. MM/DD/YYYY HH:MM AM/PM |
| DateFamily | DateSent (for emails), DateReceived (for emails), DateCreated (for non-emails), or DateLastModified (for non-emails) of parent document. MM/DD/YYYY HH:MM AM/PM |



| | |
|---|---|
| FileName | Name of the file as maintained in the ordinary course of business with extension. |
| MD5Hash | The computer-generated MD5 Hash value for each document. |
| ParentID | Document ID of the parent document; this field will only be available on child items |
| ChildID | Attachment document IDs of all child items in family group delimited by semicolon; this field will only be present on parent items; aka AttachmentDocID |
| TextPath | The path to the corresponding text file for each record on the delivery media, including filename. |
| NativePath | The path to the native-format file corresponding to each record on the delivery media, including the file name (if a native-format file is provided). |

